At this time, we'll hear Doyle v. Mastercard. Good morning. I'm Todd Bank for the plaintiff, Ellen Robert Doyle. Given that the marketing promotion had a maximum total donation of $4 million, Doyle believed that there would be at least a reasonable possibility that the total amount that was raised would actually fall short of $4 million. The flip side of that being that he believed that a given qualifying transaction would result in a donation, that is the one or two-cent donation, for which there would be at least a reasonable possibility that that donation would not be made absent the qualifying transaction. And Mr. Doyle's beliefs are reflected and further supported by Mastercard's repeated use of the term goal. The term goal, as I think any normal person would commonly understand it, is an achievement that one hopes or intends to reach but that has a reasonable possibility, at least a reasonable possibility, of not being achieved. What is the term of this contract that you allege that was violated? That's the term because as this Court has held and we discussed it in the briefs, a contract includes the reasonable expectations of the party. I don't know that there's ever a contract that could be limited to its literal terms because we all have certain understandings. We're not robots. But the point is a contract has reasonable understandings. Let's use an extreme example. So is the reasonable understanding here that your client's purchases during this period would result in the penny going to the charity promotion because there would be no expectation that they would achieve the total goal? No, not at all. Then what is the brief? I'm having the same difficulty as Judge Jacobs. Okay, not that there's no expectation that they would reach the goal, that there was at least a reasonable possibility that the goal would not be reached. For example, each promotion, each year their promotion was roughly two months or so. Let's suppose, just to make the point, let's suppose that on January 1st the promotion began. It was scheduled to end no later than the end of February. And at 12.04 a.m. on January 1st, the quote-unquote goal, the $4 million, was clinched. Would anybody say that the entire campaign was essentially a sham, that there was no possibility, no reasonable possibility, and in the example, no possibility, that someone would actually make a transaction that would result in a donation that would actually make a real, a true difference in reaching that goal? The answer would be no. That goal was going to be reached regardless of any one given qualifying transaction. The whole point of the case is that MasterCard knew all along, again, let's say beyond a reasonable doubt, nothing is an absolute, I suppose, but MasterCard knew for all intents and purposes all along that it was always going to reach the quote-unquote goal, that it was always going to give or pay or donate the $4 million to the charitable organization. So what really happened here, as we describe it, and we haven't done discovery to prove anything yet, but as we describe it, what the $4 million really was, was not a donation that was meaningfully based on qualifying transactions. It was a payment to this charitable organization that enabled MasterCard to operate the marketing promotion in which it convinced or tried to convince people that they were actually contributing to a worthy cause when that, in no meaningful sense, as we describe it in the briefs and the complaint, in no meaningful sense was there any truth to that at all. And again, is there an explicit term as to the reasonable expectations? No, but there's a well-settled case law that a contract is to be interpreted to include the reasonable expectations. I think if anybody knew, any cardholder knew, just again using the extreme example just to make my point- If they knew that, then what? If a person had known- If they knew that, then what? I'm explaining. If a person had known that MasterCard was going to reach that donation all along, then they would say, so what do I need to participate for? My participation has no real effect. Yeah, but you- It's meaningless. You wouldn't spend the $10 on dinner. You might not. That's the whole point. That's one of the promotions MasterCard was saying. If you're going to dinner, please- If you're going to go out to dinner and spend more than $10, having in mind that the reason you're doing this is to contribute a penny to a worthy cause. Well, that's why MasterCard advertised- Isn't it easier to just send a check for $0.25 and save yourself a great deal of trouble? No, that has nothing to- The alternative possibilities as to contributing to the cause have nothing to do with the case. MasterCard was- Yes, someone might use a different- I'm not suggesting that someone would go out to dinner just so they could spend the money, use the card, and make an effect, a donation. But, yes, someone might go out to dinner, and, yes, they might pay with cash. They might pay with another credit card or a debit card. There are many ways to pay. Obviously, is MasterCard going to deny that? They were hoping that people were going to use a MasterCard in situations like this when they otherwise would not have- Well, that's the whole point of the campaign. They were saying, use our card. I have a question for you that does go to the facts here. As I understand it, why you say MasterCard knew this was that they had run this promotion before and they had always hit their target, right? And many days before the scheduled end date. And, again, this is all left to discovery. So, if they had disclosed that, this isn't a circumstance that's unique to your client. Many people might not have participated in the promotion, and, indeed, they might not have reached the goal. Isn't that right? If they had disclosed how early they had reached it, you mean? Yeah. Well, again, that wasn't- You're saying that they failed to disclose that they always reached the goal, and they always reached it well before the end of the promotion date. Right. Well, if they said that, lots of people might not have participated. And then they may not have reached their goal. So the sureness with which you're saying they would have reached their goal in any event doesn't seem as obvious to me. Well, Judge, first of all- What am I missing? Yeah, sure. First of all, the announcements as to having reached their goals were not part of any contract. So we don't know who saw them. But, again, second of all, those are questions for discovery. I don't know what MasterCard's economists have shown. They might say- We're talking about millions and millions of- But you're getting away most favorable to your client now. Yes. As you've pleaded it. Yes. And only discovery would show, if your theory, which I understand, only discovery could possibly show if that theory has any application here. Perhaps it does. But we haven't done discovery yet. There could well be an internal memo that maybe they even did a study in one of the years that said we have no indication that any more than the slightest fraction of cardholders refrained from participating because they knew that last year we had reached the goal earlier and that, therefore, this year we would, too, so they don't have to partake. Is it possible? Yes, but that can't be resolved on a dismissal motion without having done discovery. For all I know, maybe it will turn out to be that way, and maybe they were convinced that they wouldn't reach the goal by year four or five. But that's a theory which, again, it might come out to be true. Theoretically, I don't expect it to be. But that's for discovery to address. We'll hear you on rebuttal. Okay. Thank you. Good morning, Your Honors. What Doyle is alleging doesn't constitute a breach. The court asked the very right, the right question from the get-go. What is the breach that you are alleging? Doyle acknowledged in his papers that the terms of the so-called terms created by the advertisements are clear, definite, and explicit. As the lower court observed, Doyle actually completed compliance with the terms, which are very straightforward. A cardholder makes a qualifying transaction. That transaction is made on the earlier of the date on which the goal is met, the $4 million goal is met, which we'll call the clinch date, or the scheduled end date of the program. If that happens, a donation is made. That's it. Those are the terms, crystal clear. Doyle doesn't allege any breach of those terms. He doesn't say that the donations were not met if they met those conditions. That's it. There's no breach. So instead we're left to talk about a series of reasonable possibilities, reasonable expectations. Those expectations cannot vary the precise terms of the agreement. What do you say to the argument that when you continue to advertise this contribution after the goal has been met, you're suggesting again and again to people that these transactions will benefit a charity? It would be as though you published in the newspaper every week that you're going to match $10,000 worth of contributions to a charity, even though two weeks ago it was all matched and you paid your $10,000. If that extreme example occurred, you might have some other kind of cause of action, but you wouldn't have a breach of contract. The contract terms here are very clear, again. You're saying that if the $10,000 matching had been achieved two weeks ago and you published the same ad in the newspaper, we will match up to $10,000 for contributions to this charity, that that would not create a contract that you breach because going forward you're not going to pay a cent. If the ad discloses that the contribution will be made either before an end date or until the goal is reached, then that's it. Those are the variables that are stated in the ad. So even in that extreme example, it wouldn't constitute a breach of contract. Could it constitute some other kind of cause of action? Maybe, but that wasn't alleged here. So even in that extreme example, it wouldn't be a breach of a contract so long as the terms of the contract are disclosed, and they were disclosed here. Additionally, let's assume for the sake of argument, as we must, let's assume for the sake of argument that he's right. The complaint doesn't even allege that the plaintiff saw a post-clinch date ad or acted on a post-clinch date ad. So we're talking about these terms in a complete vacuum. First of all, the terms are all set forth in the agreement, but if you want to claim you were duped and that your reasonable expectations were not met because you made a purchase and that purchase occurred after the clinch date, how about an allegation of the complaint that I made a purchase after the clinch date, I saw the ad, made a purchase after the clinch date, relied on that ad, and was duped, and therefore the contract was breached? Even that allegation is not contained in the complaint. Then in this analysis, you would concede that each appearance of such an ad in the newspaper is essentially a new contract. I'm not conceding that it's a new contract. I'm merely taking the plaintiff's argument. The plaintiff has argued, and I'm accepting for the purposes of argument, the plaintiff's argument that these ads create a contract. If they create a contract, then A, there has to be a breach of the explicit terms of the ad, and B, for you to have this reasonable expectation, you have to allege that you saw the ad, that the ad that you saw was post-clinch date, and that you made a purchase in reliance on that ad post-clinch date. I don't see those allegations in the complaint. They're not there. He also alleges a breach of the implied covenant. That's a wholly duplicative claim. If you look at the complaint, it's exactly the same allegations plus the word bad faith. That's it. The case law is clear. That's a duplicative claim. That's duplicative of the breach of contract claim, and that doesn't fly. It's not only duplicative, but, again, it's not abridging anybody's reasonable expectation because the reasonable expectation is only created by what's contained in the ad, and the ad, as the plaintiff has acknowledged and as the lower court said, contained terms that were clear, definite, and explicit. Finally, I'll just get to the CPPA claim that he alleges. I don't know that the court needs to spend 30 seconds on that claim because, at the end of the day, the plaintiff has acknowledged that he personally doesn't state that claim. He doesn't have the claim. The court could have just as easily, as we argued below, dismissed it on Rule 12b-6 grounds. Is that because he didn't do any transactions in D.C.? Correct. He didn't do any transactions in D.C. He didn't make a purchase in D.C. He's seeking to represent a subclass of persons who made such purchase, but he doesn't have standing to do it. He didn't make a purchase in D.C. He's acknowledged that this statute does not apply to him. I'm not sure that I have more to say. Thank you. Thank you. We'll hear rebuttal. A few points. I'll try to go somewhat speedily. First point, if, as we assert, the contract included the term that the reasonable understanding would be that a qualifying transaction would result in a donation that would otherwise not be made, then, yes, by definition, a post-clinch date, we use the term, an ad that appeared after that donation was clinched, like in Your Honor's $10,000 example, of course there would be a breach of contract if that's a term of the contract. As for the ‑‑ I want to give an example. What if the plaintiff never saw the subsequent ads, the ads printed, published after the clinch date? That wouldn't be a breach. And we address, and I think the complaint is sufficient, we allege that Mr. Doyle made qualifying transactions in all relevant periods, i.e. before the clinch date and each year and after. But we do say, I think it's page 12 of the reply brief, that if the court finds that that wasn't sufficiently clear, we do request leave to amend. I don't think there would be any basis to deny leave to amend the complaint to specify that more explicitly than we did. You didn't allege that he made purchases using the card after the clinch date in reliance on having seen ads published after the clinch date. Well, that's what I was just explaining. I thought the complaint, if not explicitly stated that, implied it, but that's why, yes, I think leave to amend would be warranted because, again, could we make that allegation consistent with the allegations that we have made? Of course we could. And, of course, we're prepared to do that. I think there's a little possible confusion about how because this would be. So did you ask the district court to make that amendment? I honestly don't recall. I don't recall them having made the argument that would have prompted that request. I don't remember either side of that equation. I really just don't recall. As far as I want to give an example how because this idea about a unilateral contract, which is what it would be here in clarity, the doctrine that reasonable understandings of the parties are still part of a unilateral contract, just like in the case of a bilateral contract, it still applies. And I'll give a quick example. Someone posts up a sign, I lost an item. If you return it to me, I will pay you $100. I return the lost item, and now we have a dispute. He says, well, I never said when I'd pay you the $100. Well, there's an understanding that it would be paid within a reasonable time, that we might factually disagree about what that is, a day, a week, what have you. But the point being that merely because the contract terms didn't explicitly say that a donation would be made that otherwise might not have been made, that doesn't change just because this contract is unilateral than bilateral. But in your example, there's a missing term. And I'm not sure there's a missing term here. I'm not saying there is a missing term. I'm not even saying that there is. But I'm just saying in the example, there is something that's simply not explicitly stated in the offer, as in lost dog, I will pay $100 for its return. It didn't say when, but there's going to be a reasonable understanding. So if you return it and the person said I'll pay you in an hour, we'd probably all agree that that's okay. If he said I'll pay you in 30 years, we'd probably say that's a breach of contract. And then- Thank you. Thank you both. We'll reserve decisions. Okay, thank you.